# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JOSE ANTHONY TORREZ,
    Plaintiff,

v.

No. 3:17-cv-01223 (SRU)

DEPARTMENT OF CORRECTION,
et al.,
    Defendants.

## INITIAL REVIEW ORDER

Jose Anthony Torrez, currently confined at Northern Correctional Institution in Somers, Connecticut, filed a complaint *pro se* under 42 U.S.C. § 1983 challenging his conditions of confinement as a pretrial detainee. The defendants are the Department of Correction, Scott Semple, Monica Rinaldi, William Mulligan, Carol Chapdelaine, Giuliana Mudano, Craig Burns, Colleen Gallagher, Brian Libel, Mark A. Frayne, Dr. Yesu, Gerald G. Gagne, Jr., and Gregorio Robles. Torrez's complaint was received on July 21, 2017, and his motion to proceed *in forma pauperis* was granted on July 25, 2017.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to

state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## I. Allegations

Defendants Semple and Rinaldi, respectively, are the Commissioner and Acting Deputy Commissioner of the Department of Correction. Defendant Mulligan was the Warden at Northern Correctional Institution ("Northern"). Defendants Chapdelaine and Mudano, respectively, were the Warden and Acting Deputy Warden at MacDougall-Walker Correctional Institution ("MacDougall"). Dr. Burns is the Director of Clinical Services with regard to psychiatry for the Department of Correction. Defendant Gallagher is the Director of the Americans with Disabilities Act for the Department of Correction. Defendant Libel is a Health Services Administrator. Drs. Frayne and Yesu are psychiatrists employed at Northern and MacDougall, respectively. Dr. Gagne is a medical doctor employed at Northern. Captain Robles is a custodial officer at Northern.

Torrez is classified as seriously mentally ill. He suffers from bipolar disorder, depression, post-traumatic stress disorder, attention deficit disorder, attention deficit hyperactivity disorder, and conduct disorder. He has taken mental health medication and undergone therapy to address these conditions since childhood. Torrez also has engaged in acts of mania and has attempted suicide.

In February 2016, while he was a pretrial detainee, Torres was transferred to Northern. He was then transferred to Cheshire Correctional Institution in September 2016, and then to MacDougall in January 2017, when Phases 2 and 3 of the Administrative Segregation Program were transferred to MacDougall. Northern is a maximum security, level 5, facility. Although MacDougall is a level 4 facility, the B-1 housing unit is used as a maximum security unit. There are no mental health units at either facility.

Torrez has been confined in Administrative Segregation at both Northern and MacDougall. Administrative Segregation can involve extended periods of solitary confinement that entail social isolation and reduced environmental stimulation. In Phase 1 of Administrative Segregation, inmates are confined in a small sensory deprivation cell for 23 hours per day. They eat all meals in the cell. Inmates are removed from the cell for one hour of recreation per day and showers three times per week. Inmates are placed in full restraints any time they leave their cells. They are denied contact visits and are limited to one 15-minute telephone call per week. Inmates are denied work assignments and cannot participate in congregate programs. They are permitted only limited property and have restricted use of sinks and toilets.

Torrez has been confined in Administrative Segregation for over a year. He was in phase 1 for most of the time he was at Northern. Torrez alleges that defendant Gagne sexually harassed him by forcing him to exit his cell and speak with Dr. Gagne one-on-one at Northern.

Torrez has received disciplinary sanctions as a result of behavior that is caused by his mental illness. Those sanctions include placement in punitive segregation, denial of visitation and telephone privileges, placement on in-cell restraint status, placement on behavioral observation status, and exposure to excessive amounts of chemical agent during cell extractions.

In many instances, the defendants did not attempt mental health interventions before using discipline or punishment.

    Dr. Frayne has watched Torrez attempt to commit suicide without calling a code and instead placed Torrez on behavior observation status with no one watching him or providing mental health treatment.

    Torrez has not been provided adequate mental health care at Northern or MacDougall. The defendants failed to ensure these facilities are adequately staffed with mental health providers so the inmates can receive proper mental health treatment. They also have not trained custodial staff to properly deal with mentally ill inmates.

    Defendants Libel, Burns, Yesu, Frayne and Gagne have failed to develop an adequate mental health plan for Torrez. They have not provided him with psychotherapy. Despite documentation from the community, defendants Frayne and Gagne claim that the plaintiff is manipulating his illness. Torrez alleges that he should have been confined at Garner Correctional Institution ("Garner").

    The conditions of confinement have exacerbated Torrez' mental illness and caused him to suffer physical injury. He experiences racing thoughts, fear for his safety, loss of sleep, and extreme anxiety attacks. Torrez has engaged in self-harm in the form of beatings by custodial staff, and has attempted suicide. All defendants had access to Torrez' mental health records and, thus, were aware of his mental health needs. In addition, Torrez repeatedly informed the defendants about his conditions.

**II. Analysis**

Torrez includes three counts in his complaint. In the first count, he alleges that all defendants have been deliberately indifferent to his serious mental health needs in violation of the Eighth and Fourteenth Amendments. In the second count, Torrez contends that all defendants created or continued a policy or custom under which he was deprived of adequate mental health care and subordinate staff was not adequately supervised and trained. Finally, in the third count, Torrez alleges that he had a protected liberty interest in avoiding transfer to Northern or MacDougall, and that defendants Semple, Rinaldi and Burns violated his due process right when they failed to transfer him to Garner. He also alleges that all defendants violated his right to due process by failing to comply with the Americans with Disabilities Act.

    A. <u>Fourteenth Amendment Claims</u>

Torrez alleges that he was a pretrial detainee during some of the time he was confined at Northern. Claims of pretrial detainees are considered under the Fourteenth Amendment while claims of sentenced inmates are considered under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Department of Correction records show that Torrez was sentenced on May 27, 2016. *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num =403197 (last visited July 26, 2017). After sentencing, Torrez's rights arose under the Eighth Amendment, rather than the Fourteenth.

I note that Torrez recently filed a complaint that included a challenge to the conditions of confinement in Administrative Segregation at Northern during the time that he was a pretrial detainee, as well as a claim for deliberate indifference to his mental health needs during that

5

time. *See Torrez v. Semple*, No. 3:17-cv-1211 (SRU). Hence, in both cases, Torrez has attempted to raise claims concerning the time Torrez was a pretrial detainee.

Under the prior pending action doctrine, generally, where two lawsuits include the same claims, "the first suit [filed] should have priority." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991). "Where two pending actions address the same legal claims and conduct, the court may dismiss the second action as long as the controlling issues in the dismissed action will be determined in the other lawsuit." *Edwards v. North American Power and Gas, LLC*, 2016 WL 3093356, at *3 (D. Conn. June 1, 2016) (internal quotation marks omitted). Both the Second Circuit and this court have applied the prior pending action doctrine to specific claims within one lawsuit that also are included in a prior pending lawsuit. *See, e.g., Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006) ("[O]n the basis of the 'prior pending action doctrine,' . . . [t]he district court acted within its discretion in dismissing claims that are the subject of other, earlier lawsuits."); *Harnage v. Caldonero*, 2017 WL 2190057, at *5 (D. Conn. May 18, 2017) (dismissing two claims under prior pending action doctrine).

Because Torrez includes the claims relating to the time he was a pretrial detainee in his prior case, those claims are dismissed. If any defendants in this case who were involved in those claims have not been named as defendants in the prior case, then Torrez may move to amend his complaint in the prior case to include them. Should he choose to do so, his amended complaint shall explain how the new defendants were involved in the claims relating to the time Torrez was a pretrial detainee.

B. Eighth Amendment Claim

Torrez' contends that his confinement in Administrative Segregation while a sentenced inmate constitutes deliberate indifference to his serious mental health needs.

To state a claim for deliberate indifference to a serious mental health need, Torrez must show both that his mental health need was "serious" and that the defendants acted with a "sufficiently culpable state of mind." *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). The deliberate indifference standard has "both [] objective and subjective" components. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)—that is, the condition must "produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Torrez's mental disorders, as alleged, satisfy the objective component.

The subjective component requires that defendants be "subjectively aware" that their actions create "a substantial risk [of] serious inmate harm." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Torrez alleges that the defendants were aware of the lack of mental health treatment available, and that the conditions at the prisons would exacerbate his mental illnesses. Those allegations are sufficient, at the present stage of the litigation, to state a plausible claim for deliberate indifference to mental health needs.

C. Supervisory Liability

Torrez also includes a claim for supervisory liability against all defendants for creating or continuing the policy under which mentally ill inmate are confined under restrictive conditions

without adequate mental health treatment in Administrative Segregation, and for failing to train and supervise subordinates to prevent further mental health harm.

To state a claim for supervisory liability, Torrez must demonstrate that the defendants (1) actually and directly participated in the alleged constitutional violation; (2) failed to remedy a wrong after being informed of it though a report or appeal; (3) created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation, or permitted such a policy or custom to continue; (4) were grossly negligent in their supervision of the officers who committed the constitutional violation; or (5) were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). In addition, Torrez must demonstrate an "affirmative causal link" between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Torrez alleges that the defendants were responsible for creating or continuing the Administrative Segregation program for mentally ill inmates and assigning the program to correctional facilities without proper mental health treatment programs. He also alleges that they failed to train subordinates to not punish mentally ill inmates for conduct attributable to the illnesses. Those allegations are sufficient, at the present stage of the litigation, to state a plausible claim for supervisory liability.

D. Due Process

Torrez also asserts a due process claim. He contends that defendants Semple, Rinaldi, and Burns violated his right to due process in two ways: first, by transferring him to Northern and

MacDougall and then refusing to transfer him to Garner; and second, by failing to comply with the Americans with Disabilities Act.

   a. *Location of Confinement*

The Due Process Clause of the Fourteenth Amendment provides that no State "shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of law." *Baker v. McCollan*, 443 U.S. 137, 145 (1979) (internal quotation marks and citation omitted). Here, Torrez challenges the fact of his confinement in Administrative Segregation, not the procedures that resulted in his classification. Therefore, he fails to state a due process claim.

Furthermore, although Torrez has a constitutional right to adequate mental health treatment, he has no constitutional right to be housed in any particular correctional facility. *See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (holding that "an interstate prison transfer . . . does not deprive an inmate of any liberty interest protected by the Due Process Clause"); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (due process does not protect a "duly convicted prisoner against transfer from one institution to another within the state prison system," even where conditions in one prison are "more disagreeable" or the prison has "more severe rules").

   b. *Americans with Disabilities Act*

Torrez also alleges that all defendants violated his right to due process by failing to comply with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.* at § 12101(b)(1). The

9

statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." *Id.* at § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). "[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). For purposes of this Ruling, I assume that Torrez's mental disorders constitute a disability under the ADA.

To state a claim under the ADA, Torrez must also allege facts showing that he was denied or excluded from a service, program or activity because of his disability. Torrez alleges that he was treated the same as any other inmate accused of assaulting staff. His claim is that he should have been treated differently because of his disability. Thus, Torrez fails to allege facts satisfying the second requirement to state an ADA claim. Absent an underlying ADA claim, there is no factual basis for the claim for denial of due process.

### III. Conclusion

All Fourteenth Amendment and due process claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the Eighth Amendment claims for deliberate indifference to serious mental health needs and the supervisory liability claim.

In accordance with the foregoing analysis, I enter the following orders:

(1)     **The Clerk shall** verify the current work address for each individual defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packets containing the Complaint to the defendants within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT  06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(3)     **The Clerk shall** send Torrez a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, then they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) Should Torrez change his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that **plaintiff MUST notify the court**. Failure to do so can result in the dismissal of the case. Torrez must give notice of a new address even if he is incarcerated. Torrez should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Torrez has more than one pending case, then he should indicate all of the case numbers in the notification of change of address. Torrez should also notify the defendants or their attorneys of his new address.

(10) Torrez shall use the Prisoner Efiling Program when filing documents with the court.

So ordered.

Dated at Bridgeport, Connecticut, this 1st day of September 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge